Kamaria A. Guity, Esq.
Atty ID No. 336852021
FAEGRE DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, New Jersey 07932
Tel.: (973) 549-7000
Fax: (973) 360-9831
kamaria.guity@faegredrinker.com
*Attorneys for Plaintiff Massachusetts Mutual*
*Life Insurance Company*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, | CIVIL ACTION NO. 2:24-cv-7669 |
| Plaintiff, | |
| v. | **COMPLAINT FOR RESCISSION** |
| RUPEN PATEL and UCHITA SHAH, | |
| Defendants. | |

Plaintiff, Massachusetts Mutual Life Insurance Company ("MassMutual"), by and through its attorneys, hereby files this Complaint for Rescission against Defendants Rupen Patel ("Mr. Patel") and Uchita Shah ("Ms. Shah") (collectively, the "Defendants") for rescission and declaratory judgment, and, in support thereof, avers as follows:

**INTRODUCTION**

1. This is an action to rescind a life insurance policy issued by MassMutual insuring the life of K.S.[1] (the "Insured"), due to the Defendants' material misrepresentations in the application for the policy, and for a declaration that the policy at issue is void *ab initio*.

---

[1] MassMutual refers to the Insured using their initials to protect the minor's identity pursuant to Fed. R. Civ. P. 5.2.

2. MassMutual relied on Defendants' misstatements regarding the Insured's medical history and had MassMutual been aware of the Insured's medical conditions it would not have issued the policy. Therefore, MassMutual is entitled to rescind coverage.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. This action arises between citizens of different states and in which the matter in controversy exceeds $75,000. MassMutual is a citizen of the Commonwealth of Massachusetts, and Defendants are citizens of the State of New Jersey.

4. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as at least one Defendant is a resident of the State of New Jersey and a substantial part of the events or omissions giving rise to MassMutual's claims occurred within this judicial district.

## BACKGROUND

5. On or about November 2, 2021, the Defendants completed and submitted to MassMutual an application for life insurance (the "Application"), which was later discovered to contain material misrepresentations. A true and correct copy of the Application is attached hereto as **Exhibit A**.[2]

6. Part 2 of the Application, Section B.2.a. states: "[i]s the Proposed Insured currently: [u]nder treatment by a member of the medical profession or taking any prescription medications (other than contraceptives)?" *See* Ex. A, at 16.

7. The Defendants checked the "No" box in response to question B.2.a. *Id*.

8. Part 2 of the Application, Section B.3.e. states: "[i]n the past 10 years, has the Proposed Insured been diagnosed, treated, tested positive for, or been given medical advice by a

---

[2] All exhibits have been redacted for privacy protection pursuant to Fed. R. Civ. P. 5.2

member of the medical profession for… [d]epression, anxiety, … attention deficit hyperactivity disorder (ADHD) or other emotional disorder?" *Id*.

9. The Defendants checked the "No" box in response to question B.3.e. *Id*.

10. Mr. Patel and Ms. Shah each signed the Application dated November 2, 2021, acknowledging that they read the Application, including all statements and answers, and "affirm[ed] that these statements and answers are true, complete and correctly recorded to the best of [their] knowledge and belief." *See* Ex. A, at 17.

11. The signed affirmation further states, "[t]he statements and answers in the application are the basis for any Policy issued by MassMutual and no information [ ] will be considered to have been given to MassMutual unless it is stated in the application.  I hereby adopt all statements made in the application and agree to be bound by them." *Id*.

12. In reliance on Defendants' answers in the Application, MassMutual issued Whole Life Policy No. 22819766 (the "Policy") to Defendants as co-owners, on the life of the Insured, with a base policy face amount of $1,000,000 on November 16, 2021.  A true and correct copy of the Policy is attached hereto as **Exhibit B**.

## DISCOVERY OF THE MISREPRESENTATIONS AND INVESTIGATION

13. On or about December 7, 2021, the Defendants submitted a Supplement to the Application amending their responses to three different questions therein.  Mr. Patel and Ms. Shah each signed the form, again affirming that all representations made on the Application were true and complete.  A true and correct copy of the Supplement to Application is attached hereto as **Exhibit C**.

14. The Supplement to the Application was yet another opportunity for the Defendants to fully disclose the Insured's medical conditions responsive to questions B.2.a. and B.3.e.

15. Subsequently, the Defendants attempted to obtain an additional $1,000,000 in life insurance coverage for the Insured. MassMutual advised the Defendants that medical records and Attending Physician Statements (APS) from the Insured's providers were required to determine insurability because the accumulated death benefit with the proposed additional coverage exceeded $1,000,000.

16. Therefore, MassMutual requested the necessary documentation from Dr. Christine Stern, Dr. Benard Dreyer, and Dr. Karen Hopkins—who were disclosed as the Insured's medical providers.

17. On or about December 21, 2021, MassMutual received the Insured's medical records and an APS from Dr. Christine Stern at Pediatric Associates of NYC. A true and correct copy of the documents submitted by Dr. Stern are attached hereto as **Exhibit D**.

18. The records show that the Insured has been Dr. Stern's patient since 2019. Dr. Stern's visit notes indicate that the Insured was later diagnosed with Autism Spectrum Disorder (Autism) and Attention-deficit/hyperactivity disorder (ADHD). Specifically, Dr. Stern reports:

   a. the Insured presented with a developmental disorder and certain delayed milestone markers in January 2020. *See* Ex. D, at 19.

   b. the Insured was assessed for Autism and his treatment plan included 20 hours per week of Applied Behavior Analysis (ABA), physical therapy two times per week, and occupational therapy three times per week. *Id*. at 13, January 29, 2021 note.

   c. the Insured's physical therapy was then increased to three times per week, and he received speech therapy four times per week in addition to his initial treatment plan. *Id*. at 12, March 31, 2021 note.

   d. the Insured was diagnosed with Autism at the age of 15 months and subsequently also diagnosed with ADHD. *Id*. at 11, October 22, 2021 note.

19. The Defendants failed to disclose this medical history on the Application or thereafter when seeking additional coverage.

20. On or about January 19, 2022, MassMutual received the Insured's medical records and an APS from Dr. Benard Dreyer at Hassenfeld Children's Hospital. A true and correct copy of the documents submitted by Dr. Dreyer are attached hereto as **Exhibit E**.

21. The records indicate that Dr. Dreyer initially diagnosed the Insured with Autism on January 24, 2020 and shortly after he began receiving multiple services related thereto. Specifically, Dr. Dreyer reports:

   a. the Insured began receiving the aforementioned therapy services through the New York Center of Infants and Toddlers in March 2020. *See* Ex. E, at 9.

   b. the Insured's Autism diagnosis was based on Dr. Dreyer's direct observation of the Insured's behavior and through the Child Autism Rating Scale. *Id*. at 11.

   c. As of January 2022, the Insured was still in need of intensive ABA services and his cognitive delays were "both significant and pervasive." *Id*. at 11.

22. Again, the Defendants did not disclose any of the medical treatment or diagnoses provided by Dr. Dreyer on the Application or thereafter when seeking additional coverage.

23. Lastly, on or about May 5, 2022, MassMutual received the Insured's medical records and an APS from Dr. Karen Hopkins at Hassenfeld Children's Hospital. A true and correct copy of the documents submitted by Dr. Hopkins are attached hereto as **Exhibit F**.

24. The records indicated that Dr. Hopkins determined intensive ABA was medically necessary to treat the Insured's diagnosis of Autism. At the time, the Insured's prescribed treatment included physical therapy, occupational therapy evaluation, occupational therapy for feeding, speech-language evaluation and therapy, and feeding/oral motor therapy. *See* Exhibit F, at 11.

25. Likewise, the Defendants neglected to disclose the medical treatment prescribed by Dr. Hopkins on the Application or thereafter when seeking additional coverage.

26. Based on MassMutual's review of the Insured's medical records, it denied the request for additional coverage and discovered that the Defendants omitted the Insured's medical conditions on the Application. Therefore, MassMutual initiated an investigation of the Defendants' potential material misrepresentations concerning the Policy.

27. On July 26, 2022, an investigative consultant interviewed Mr. Patel concerning the misrepresentations. During this interview, Mr. Patel acknowledged he was aware of the Insured's medical conditions and agreed this information should have been disclosed on the Application. However, Mr. Patel provided no justification for the omission.

28. Additionally, MassMutual attempted to reach Ms. Shah for an interview during the investigation on three separate occasions—July 25, July 26, and July 28, 2022—but was unable to reach her.

29. MassMutual's investigation concluded that the medical records established the Insured was diagnosed and being treated for Autism and ADHD, and this medical history was responsive to questions B.2.a. and B.3.e. on Part 2 of the Application. The Defendants were aware of the Insured's medical conditions at the time of the Application but inexcusably failed to disclose this information. At bottom, had the full extent of the Insured's medical conditions been disclosed during the underwriting process the Policy would not have been issued.

30. Consequently, the misrepresentations were material to the issuance of the Policy and MassMutual decided to rescind coverage according to the Policy's terms.

## **RESCISSION OF THE POLICY**

31. As set forth in the Policy, MassMutual may contest the validity of the Policy within two years of the issue date for any material misrepresentation of a fact made in the initial application, or in a subsequent application, for the Policy. *See* Ex. B, at 18.

32. As such, on or about November 15, 2022, MassMutual sent letters to the Defendants communicating the results of the investigation and its decision to rescind the Policy. MassMutual also sought to return the premiums paid to date, plus interest, to Mr. Patel. MassMutual issued a premium refund check in the amount of $10,183.48, enclosed with Mr. Patel's letter. A true and correct copy of the First Rescission Letter and Premium Refund Check are attached hereto as **Exhibit G**.

33. Mr. Patel did not cash the premium refund check prior to the 150-day expiration date. Therefore, on May 15, 2023, MassMutual sent a second rescission letter to Mr. Patel enclosing a reissued premium refund check in the amount of $10,183.48 and a copy of the previous rescission correspondence. The letter informed Mr. Patel that the previous check was void and MassMutual requested that he negotiate the newly issued check to accept the Policy rescission. A true and correct copy of the Second Rescission Letter and the Second Premium Refund Check Confirmation are attached hereto as **Exhibit H**.

34. Again, the second premium refund check was not cashed within 150 days. On December 5, 2023, MassMutual sent a third rescission letter to Mr. Patel and reissued the premium refund check in the amount of $10,183.48, with copies of the previous rescission correspondences. MassMutual informed Mr. Patel that the refund was issued via check twice before and he needed to negotiate the newly issued check. A true and correct copy of the Third Rescission Letter and the Third Premium Refund Check Confirmation are attached hereto as **Exhibit I**.

35. Mr. Patel has ultimately refused to accept rescission of the Policy or negotiate any of the premium refund checks issued, which are now expired.

**CLAIM FOR RELIEF**

**FIRST CAUSE OF ACTION – RESCISSION OF THE POLICY**

36. MassMutual incorporates each of the preceding paragraphs as if set forth herein at length.

37. MassMutual rescinded the Policy within two years of the Policy's issuance date.

38. The Defendants, however, have refused to negotiate the premium refund check.

39. The Defendants knowingly made material misrepresentations regarding the Insured's medical conditions on the Application for the Policy.

40. Defendants made such misrepresentations in order to induce MassMutual to issue the Policy.

41. MassMutual relied on Defendants' representations in issuing the Policy.

42. MassMutual discovered the misrepresentations during its review of the Insured's medical records that were submitted to determine their insurability for additional coverage.

43. Undoubtedly, MassMutual would not have issued the Policy to Defendants had MassMutual known of the Insured's true and accurate medical history.

44. MassMutual is therefore entitled to a judgment rescinding the Policy.

**SECOND CAUSE OF ACTION – DECLARATORY JUDGMENT**

45. MassMutual incorporates each of the preceding paragraphs as if set forth herein at length.

46. MassMutual seeks a declaratory judgment that the Policy is void *ab initio* pursuant to the Declaratory Judgment Act. 28 U.S.C. § 2201(a).

47. The Declaratory Judgment Act ("DJ Act") provides: "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and

other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Id*.

48.     "The Declaratory Judgment Act permits a district court, '[i]n a case of actual controversy within its jurisdiction,' to 'declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.' 28 U.S.C. § 2201(a). 'T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III' of the Constitution." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). An action seeking declaratory relief satisfies the case-or-controversy requirement, and thus permits the exercise of federal jurisdiction, "if the dispute is 'definite and concrete, touching the legal relations of parties having adverse legal interests' and is 'real and substantial,' such that it 'admit[s] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 353–54 (2d Cir. 2020).

49.     The foregoing facts specifically demonstrate that there is a substantial controversy between MassMutual and the Defendants, who have adverse legal interests, and there is sufficient immediacy and reality to warrant the issuance of the declaratory judgment.

50.     Moreover, the facts set forth in the preceding paragraphs specifically demonstrate that the Defendants' knowingly made material misrepresentations on the Application.

51.     As such, MassMutual is entitled to a declaratory judgment that the Policy is void *ab initio* due to the Defendants' material misrepresentations on the Application.

## JURY DEMAND

MassMutual hereby demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, MassMutual respectfully requests that the Court enter judgment against Defendant as follows:

1. Declaring that the Policy is rescinded due to the Defendants' material misrepresentations in the Application;

2. Declaring that the Policy is void *ab initio* due to the Defendants' material misrepresentations on the Application;

3. For attorneys' fees and costs; and

4. For such other and further relief as the Court may deem just and proper.

Dated: July 10, 2024            By:     **FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Kamaria A. Guity*
Kamaria A. Guity, Esq.
Atty ID No. 024932010
600 Campus Drive
Florham Park, New Jersey 07932
Tel.: (973) 549-7000
Fax: (973) 360-9831
kamaria.guity@faegredrinker.com

*Attorneys for Plaintiff Massachusetts Mutual Life Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and notice of the filing of this document will be sent via Federal Express to the following known parties:

**Rupen Patel**
28 Ambrose Valley Lane
Piscataway, NJ 08854

**Uchita Shah**
28 Ambrose Valley Lane
Piscataway, NJ 08854

/s/ *Kamaria A. Guity*